IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KIMBERLY W.,**[1]

            Plaintiff,                              Civ. No. 6:16-cv-01970-CL

             v.                              **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY,**

            Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Kimberly W. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration pursuant to 42 U.S.C. 405(g) and 1383(c)(3), denying her

claim for benefits. For the reasons below, the Commissioner's decision is AFFIRMED.

---

[1]In the interest of privacy, this Order uses only the first name and the initial of the last name of
the non-governmental party or parties in this case.

## BACKGROUND[2]

Plaintiff is a fifty-eight-year-old woman with a history of back pain, hip pain, cervical pain, thoracic disc bulge and pain, fibromyalgia, fatigue, cervical spondylosis, costochondritis, carpal tunnel syndrome, depression, and post-traumatic stress disorder ("PTSD"). Tr. 57-58, 60, 93, 98-100, 109. In October 2012, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning March 1, 2010. Tr. 133,135. The agency denied the claim both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 180. She appeared for two hearings before ALJ Sue Leise in March and June of 2015. Tr. 52-74, 77-108. On January 20, 2016, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 30-43. Plaintiff requested review of the hearing decision, which the Appeals Council denied in August 2016. Tr. 1-4. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

---

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 23.

1.     Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a.   The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not

> disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
> 416.960(c). If the claimant cannot perform such work, he or she is disabled.
> *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2015.

2. Plaintiff did not engage in substantial gainful activity from the alleged onset date of March 1, 2010.

3. Plaintiff has the following severe impairments: cervical spondylosis, fibromyalgia, chronic pain syndrome, obesity, carpal tunnel syndrome status post surgery, and degenerative joint disease of the left hand.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: she can stand and walk four hours of an eight-hour workday. She can sit at least six hours of an eight-hour workday. She can occasionally climb ramps and stairs. She should not climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She is limited to occasionally overhead reaching bilaterally. She is limited to frequent but not constant fingering bilaterally. She is limited to frequent reaching and handling. She should avoid exposure to hazards such as unprotected heights and dangerous machinery.

6. Plaintiff is capable of performing past relevant work as a production assembler. Although Plaintiff is capable of performing past relevant work, the ALJ made the following alternative findings:

7. Plaintiff was born on June 21, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act. Tr. 43.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v.*

*Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

**DISCUSSION**

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

2. Did the ALJ properly find PTSD, depressive disorder, and costochondritis non-severe impairments at step two?

3. Did the ALJ properly include all of Plaintiff's credible functional limitations in the RFC finding?

4. Does the Commissioner's Non-Disability Decision Remain Supported by Substantial Evidence, Despite the Other Evidence Submitted to the Appeals Council and Made Part of the Administrative Record?

5. Is the record accurate and complete, considering that the Agency removed information unrelated to Plaintiff, and because there is no new evidence before the Court?

The Court finds that the ALJ did not err regarding any of the issues at bar. The ALJ's decision is therefore affirmed.

**I.      The ALJ properly evaluated Plaintiff's subjective complaints and substantial evidence supports the ALJ's analysis.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 96-7p, *available at* 1996 WL 374186. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill*, 12 F.3d at 918). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)).

In this case, the ALJ applied the requisite two-step framework and cited specific, clear, and convincing reasons for discounting portions of Plaintiff's subjective symptom testimony. Plaintiff testified regarding her impairments and limitations at both her hearings. At the first hearing in March 2015, Plaintiff's attorney explained that Plaintiff's primary impairment is chronic pain due to fibromyalgia. Tr. 80. Plaintiff described that her pain makes it difficult to sleep at night, such that she does not wake until between noon and 3:00pm. Tr. 87. She then spends the majority of her day reclining and attempting to be comfortable. Tr. 88. She does not cook because she cannot stand for extended periods, and her fiancé does the household chores

such as laundry and grocery shopping. *Id.* She indicated that her pain medications were effective, but that she had "breakthrough pain all of the time." Tr. 89. She explained that even with medication, her pain level reaches 10/10 every day. Tr. 90. She described having such pain all over her body, with more problematic areas such as her neck, shoulder, hips, knee, and foot. Tr. 92. She alleged carpal tunnel syndrome, which causes her hands to go numb which precludes her from holding light objects such as her phone. Tr. 93. She described attending physical therapy, which leaves her in pain for days afterward. Tr. 94. Plaintiff testified she was taking medication for her mental impairments including depression and PTSD, but she was unsure if it was effective. Tr. 95. Plaintiff brought a cane to the hearing, but testified that it had not been prescribed to her. *Id.* She further described pain in her buttock area from domestic violence in her past, which continues to affect her ability to balance. *Id.* Plaintiff also testified that she has PTSD from past domestic violence which interferes with her ability to function in public settings. Tr. 99. She feels that her pain has worsened over time, and her pain medication makes her drowsy throughout the day. Tr. 100.

Plaintiff attended a consultative examination prior to the second hearing in June 2015. She also had carpal tunnel surgery in between hearings, which provided some relief from numbness in her left hand. Tr. 57-58. Plaintiff felt that the summary of her consultative examination was "fair." Tr. 60. Plaintiff explained that her pain and pain medication would prevent her from working due to side effects including dizziness, balance problems, and concentration issues. Tr. 60-61. Plaintiff testified that if she worked, she would need to lie down throughout the day, and change positions every ten minutes. Tr. 61, 64-65. She described that her cane use exacerbates her wrist pain. Tr. 63. She felt that she cannot lift more weight than that of a gallon of milk. Tr. 64. Near the conclusion of the hearing, the VE testified that if a person

required frequent unscheduled breaks throughout the day, or would miss at least 16 hours of work per month, her ability to sustain competitive work would be affected. Tr. 73.

The ALJ provided a thorough summary of Plaintiff's hearing testimony in her written decision. Tr. 35-36. The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . her statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible." Tr. 36. In support, the ALJ set forth the following rationales: (1) her allegations of disabling symptoms were not supported by her treatment records and the objective evidence of record, including medical imaging; (2) Plaintiff's symptom allegations were inconsistent; and that (3) her medical records reflected only conservative treatment. Tr. 36-39.

The ALJ determined that Plaintiff's testimony of disabling symptoms was not supported by her treatment records and the objective evidence of record. Lack of objective evidence is a valid, clear-and-convincing rationale for finding a plaintiff's testimony not fully credible. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ provided several illustrations from the record in support of her finding. First, despite her allegations of pain, an MRI of her left shoulder showed "no evidence of rotator cuff tear or osteochondral abnormalities." Tr. 371. Following what was diagnosed as a cervical strain and left shoulder strain in January 2009, Plaintiff indicated she had been approved for a cervical spine MRI, which was not done at the time. *Id.* Plaintiff attended physical therapy for the strains, and subsequently told a provider that she had been released to regular work without any restrictions. Tr. 36, 364, 371. Indeed, Dr. Annette Weller, M.D., indicated that Plaintiff's thoracic strain had resolved by May 2010. Tr. 36, 355. Further, Plaintiff reported improvement with physical therapy and medication, estimating a pain level of 2-3/10 when using medication. Tr. 37, 382. Impairments that are effectively treated with

medication are not disabling under the Act. *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

When Plaintiff established care with John Lebow, M.D., he diagnosed spinal column pain, fibromyalgia, costochondritis, bilateral hip pain, and PTSD. Tr. 37, 479. Dr. Lebow, however, indicated that it was difficult for him to "come up with a clear-cut diagnosis of fibromyalgia in a context of her other issues." Tr. 37, 479. He noted that she was "not on any kind of neuropathic pain management" at the time. *Id.* Despite Plaintiff's allegations of severe hip and pelvic pain, subsequent x-rays of the area were "unremarkable." Tr. 37, 418; *see also* Tr. 442. Furthermore, as the ALJ found, Plaintiff's neurological examinations have demonstrated normal sensation, reflexes, coordination, and muscle strength. Tr. 37-38, 392, 431-32.

Plaintiff continued to endorse spinal pain and eventually had an MRI in 2015, which was interpreted as showing multilevel degenerative disc disease, but it was noted that the findings were "stable and unchanged" compared to previous imaging in 2003, 2009, and 2010. Tr. 38, 439. Dr. Weller reviewed the 2015 MRI, but recommended only conservative treatment including physical therapy, a hot pack, and ibuprofen. 37, 457.

The ALJ thoroughly assessed Plaintiff's symptom allegations regarding her wrist pain, for which she underwent carpal tunnel release in 2015. Tr. 38. The ALJ found that following the procedure, Plaintiff told her provider that she was "doing very well." Tr. 38, 510. The provider noted good opposition, full strength, and intact sensation. *Id.* Both prior to and after the carpal tunnel release surgery, Plaintiff complained of wrist pain caused by using her cane. Tr. 36. However, as Plaintiff conceded, the cane was not prescribed. Tr. 39. In 2014, Dr. Lebow reported that he could not identify "major physical impairment that would justify" her cane use.

Tr. 39, 471. Further, chart notes reflected that Plaintiff's gait was only slightly antalgic, or not antalgic at all. Tr. 37, 406, 431.

Regarding mental impairments, although Plaintiff alleges being greatly affected by PTSD and major depressive disorder, a 2015 consultative psychological assessment indicated that her mental symptoms "did not interfere with her performance in the workplace, despite their origin 30 years ago." Tr. 40, 504. The ALJ additionally determined that her treatment records "reveal no significant cognitive deficits and mental status exams have typically been normal." Tr. 33, 395, 506.

Accordingly, for all the reasons discussed above, the ALJ's finding regarding a lack of objective medical evidence to substantiate Plaintiff's alleged extreme pain and mental limitations was clear and convincing, and properly supported by substantial evidence.

The ALJ also discredited Plaintiff's symptom testimony on the basis of inconsistent statements she made to providers throughout the record. Tr. 39. For example, the consultative psychologist, Paula M. Belcher, M.D., reported that "[t]his client lacks some credibility in that she appears to be exaggerating her physical and emotional pain to some degree." Tr. 504. Indeed, although Plaintiff told Dr. Belcher that she was unable to carry a gallon of milk, the doctor indicated that Plaintiff arrived at the examination carrying a large bag which "likely weighed as much if not more than a gallon of milk. *Id.* Further, contrary to Plaintiff's allegations that her mental impairments prevent her from working in her brief before the Court, Dr. Belcher reported that Plaintiff "stated clearly that neither depression nor anxiety ever got in the way at work." *Id.* Moreover, despite Plaintiff's allegations of extreme pain all over her body which frequently reaches a severity of 10/10, the ALJ found that she was able to work until March 2010. Tr. 38. The ALJ also noted that Plaintiff's testimony of progressively worsening pain was inconsistent

with her 2014 report to a mental health provider that her previous doctor had effectively

managed her pain for 14 years. Tr. 39, 490. Such inconsistencies are valid rationales for finding a

plaintiff's symptom testimony unreliable. *See Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir.

2017).

Finally, the ALJ determined that Plaintiff's allegations of disabling symptoms were

belied by the medical record, which generally reflected no more than conservative treatment. Tr.

39. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony

regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Indeed, as discussed in greater detail above, aside from her carpal tunnel release in 2015, the

medical record did not include treatments more aggressive than medication prescribed for pain.

Tr. 39. The ALJ accurately found that despite Plaintiff's complaints of disabling cervical spine

pain, there was no indication that surgery was recommended. *Id.* Further, as noted above,

Plaintiff indicated that her medication was effective in managing her pain, and had been so for

14 years. Tr. 39, 490. Similarly, although Plaintiff alleged that she had a significant history of

spousal abuse 30 years ago that contributed to her severe pain symptoms, Plaintiff apparently

never required medical attention due to the abuse. 39, 500-01. Moreover, despite longstanding

disabling symptoms of pain and mental limitations, Plaintiff was able to work until 2010, and did

not seek any mental health treatment until early in 2015. Tr. 39, 502.

Thus, for all the reasons discussed herein, the ALJ did not err in determining that

Plaintiff's symptom testimony was not fully credible. Moreover, even if not all of the ALJ's

rationales for rejecting symptom testimony were legally sufficient, no remand is warranted if

"the ALJ's reasoning and ultimate credibility determination were adequately supported by

substantial evidence in the record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1162-63 (9th Cir. 2008). Here, Plaintiff provided only a general assertion that the ALJ erred in assessing her credibility, without assigning error to any specific rationale. Accordingly, for the reasons discussed above, the ALJ provided clear-and-convincing rationales which were supported by substantial evidence; therefore, the ALJ's credibility determination is affirmed.

## II.    The ALJ properly found Plaintiff's PTSD, depressive disorder, and costochondritis non-severe impairments at step two.

Plaintiff argues that the ALJ improperly evaluated the severity of her PTSD, depressive disorder, and costochondritis impairments at step two of the sequential evaluation process. Pl.'s Br. 2. At step two, an ALJ must evaluate all of a claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1520(c), 916.920(c). An impairment is deemed "severe" if it is medically determinable and causes more than a minimal limitation in a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1522, 916.922; SSR 96-4p, *available at* 1996 WL 374187.

Here, the ALJ considered the severity and limiting effects of Plaintiff's PTSD and depressive disorder in her decision. *See* Tr. 32-33, 40-41. As discussed above, consultative psychologist Dr. Belcher diagnosed PTSD and major depressive disorder in April 2015. Tr. 504. However, Dr. Belcher explained that those diagnoses "should be viewed with caution, as they are based solely on [Plaintiff's] self report, and she states those symptoms did not interfere with her performance in the workplace, despite their origin being 30 years ago." *Id.* Dr. Belcher also noted that Plaintiff "lacks some credibility in that she appears to be exaggerating her physical and emotional pain to some degree . . . she appears to have disproportionate thoughts and persistent anxiety about her health." *Id.* Dr. Belcher indicated that Plaintiff had no limitation in her ability to understand, remember, and carry out instructions due to her mental impairments. Tr. 505. Although Dr. Belcher opined that Plaintiff had mild impairment in her ability to respond

appropriately to usual work situations, changes in routine, and interacting with coworkers, the doctor explained that Plaintiff "denies that any mental health issues were problematic in her previous work environments[,]" and that Plaintiff "does not report currently that they are problematic in any way in her daily activities." Tr. 506.

No other acceptable medical source of record provided an opinion contrary to Dr. Belcher's, and thus the ALJ accorded Dr. Belcher's assessment "great weight." Tr. 40-41. Although the reviewing Agency physicians opined that Plaintiff had no medically determinable mental impairments at all, the ALJ accorded diminished weight to those opinions because they did not include Dr. Belcher's subsequent diagnoses. Tr. 40-41, 114, 126, 146, 158. Indeed, Plaintiff does not contest the weight accorded to Dr. Belcher's opinion. As such, the ALJ's non-severe finding was supported by the discussion of Plaintiff's normal mental status examinations, reports that mental impairments did not affect her ability to work, and limited conservative treatment history. *Supra.*

Further, the ALJ explained that Plaintiff's mental impairments were assessed by a non-acceptable medical source, Elizabeth Perrine, M.A., who examined Plaintiff in October 2014. Tr. 41, 490-94; *see* 20 C.F.R. §§ 404.1502(a), 916.902(a) (defining acceptable medical source). Ms. Perrine included a diagnosis of PTSD, and assigned a Global Assessment of Functioning ("GAF") score of 49. Tr. 494. The ALJ assigned "little weight" to Ms. Perrine's assessment because she examined Plaintiff only once, and found that the GAF score "was merely a snapshot of the claimant's functioning at a particular time." Tr. 41. Based on the mental status examinations discussed above, Plaintiff's own testimony, and the deference owed to the opinion of an acceptable medical source compared to a non-acceptable medical source, it was proper for the ALJ to accord greater weight to Dr. Belcher's opinion.

Thus, for all these reasons, the ALJ did not err in finding Plaintiff's PTSD and Depressive Disorder non-severe at step two.

Plaintiff also argues that the ALJ did not properly assess functional limitations arising from her costochondritis[3] at step two of the evaluation. Although the ALJ did not identify costochondritis by name at step two, she did consider Plaintiff's pain allegations associated with the rib cage area. Tr. 32 (finding chronic pain syndrome severe at step two), 36 (discussing chest wall contusion and thoracic strain which resolved), 37 (noting thoracic rib pain complaints and costochondritis diagnosis). Further, the ALJ accorded great weight to the opinion of Dr. Suzanna Hahn, who provided a consultative examining in May 2013. Although "right thoracic rib pain" was one of Plaintiff's chief complaints, Dr. Hahn discussed Plaintiff's rib pain allegations but did not include rib pain or costochondritis in her diagnoses. Tr. 403-04, 408. Moreover, despite a thorough physical examination, Dr. Hahn did not note symptoms related to rib pain, or identify any related functional limitation. Tr. 405-08. Finally, no doctor of record included any specific limitations related to costochondritis. Additionally, the Court notes that Plaintiff does not assign error to the weight accorded to Dr. Hahn's medical opinion.

Thus, for the reasons explained above, the ALJ did not err in assessing Plaintiff's PTSD, depressive disorder, or costochondritis at step two. Furthermore, even if the ALJ erred in failing to find one of the relevant impairments severe at step two, the error is generally harmless so long as the RFC properly accounts for any associated limitations which the ALJ deems credible. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

///

///

---

[3] Costochondritis is the inflammation of the cartilage of the rib cage.

### III.    The ALJ properly included all of Plaintiff's credible functional limitations in the RFC formulation.

Plaintiff argues that the ALJ failed to properly assess all of the functional limitations arising from her impairments in the RFC formulation. *See* Pl.'s Br. 2-3. The ALJ is responsible for assessing the RFC by considering both medical evidence and a claimant's credible symptom complaints, including pain allegations. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citation omitted). "The RFC assessment must '[c]ontain a thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms* and the adjudicator's personal observations, if appropriate.'" *Id.* (citing SSR 96-8p, *available at* 1996 WL 374184) (emphasis in original). However, the ALJ is *not* required to include functional limitations, including pain allegations, which the ALJ properly finds non-credible. *See Lingenfelter*, 504 F.3d at 1035. Plaintiff contends that the ALJ failed to properly include her alleged limitations regarding the need to lie down throughout the workday, to stand and walk for more than ten minutes at a time, and side-effects of her Gabapentin, which she alleges would limit her ability to attend work reliably. Pl.'s Br. 2-3.

Here, Plaintiff's assignment of error simply restates her previous contentions regarding the limiting effects of her impairments and the reliability of her subjective symptom allegations, including her own testimony. As discussed above, the ALJ did not err in evaluating Plaintiff's symptom allegations based on inconsistencies with the medical record. Indeed, the Commissioner accurately asserts that no physician, treating or otherwise, opined or recommended that a more restrictive RFC was appropriate, aside from the temporary work restrictions assigned by Dr. Weller in 2010, which was subsequently updated to a significantly less restrictive opinion months later. Tr. 356, 363; Def.'s Br. 11. Rather, the ALJ properly considered Plaintiff's symptom and functional limitation allegations, as well as the objective

medical evidence of record, including the opinions of the acceptable medical source opinions of record. *Supra*.

Here, the ALJ accorded great weight to the Dr. Hahn's medical opinion based on the doctor's physical examination, and properly incorporated her opinion, including the ability to stand and walk for only four hours per workday due to back and hip pain, sitting up to six hours, relevant postural limitations due to back, neck, and hip pain, and manipulative limitations caused by decreased sensation in her hands. Tr. 408. In fact, the ALJ assessed additional postural and manipulative limitations in the ultimate RFC finding, as well as avoidance of exposure to workplace hazards arising from side-effects of her medication. Tr. 34-35, 40. Although Plaintiff asserts further limitations in sitting, standing, and lying down due to extreme pain, the ALJ properly found those allegations not fully credible. *Supra.* As discussed above, the ALJ properly accorded great weight to Dr. Belcher's opinion that Plaintiff's mental impairments did not materially limit her ability to perform workplace activities, which was explicitly based on Plaintiff's own testimony. *Supra.*

Moreover, the ALJ provided a thorough discussion of Plaintiff's subjective complaints and limitations, and compared and contrasted them with the medical evidence of record. Tr. 35-41. The ALJ properly considered that despite Plaintiff's allegations, she was able to work until March 2010. Tr. 38. The ALJ additionally noted that despite Plaintiff's pain allegations, her assertions were inconsistent with her report to a provider that her previous doctor had effectively managed her pain for 14 years, in addition to numerous other inconsistencies. Tr. 39. Accordingly, the ALJ adequately incorporated Plaintiff's credible allegations and limitations into the RFC.

**IV.    Despite other evidence submitted to the Appeals Council post-decision, the Commissioner's ultimate non-disability decision is supported by substantial evidence.**

Although Plaintiff does not specifically argue the issue in her brief, the Court notes that other additional evidence was submitted subsequent to the ALJ decision which was considered by the Appeals Council and made part of the administrative record. Tr. 7-15. The evidence includes an application requesting discharge of her student loans signed by Dr. Lebow, an unsigned and undated form listing various functional limitations which appears was completed by Dr. Lebow, a receipt for purchase of a cane, and an Oregon permit for disabled parking. Tr. 8-15. The Appeals Council considered the evidence submitted post-ALJ decision, but determined that it did not provide a basis for changing the ALJ's decision because it was not relevant to the adjudicative period. Tr. 1-2. Indeed, the form signed by Dr. Lebow was dated July 25, 2016, six months after the ALJ's January 20, 2016 decision. Tr. 2, 12.

Because the evidence was made part of the record, this Court must consider the evidence as part of the record as a whole, and determine whether the ALJ's non-disability decision remains supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citation omitted). For the reasons that follow, the other evidence submitted to the Appeals Council post-hearing does not change the Commissioner's ultimate non-disability decision.

First, the other evidence, including the two forms apparently completed by Dr. Lebow, appear to post-date the adjudicative period. Insofar as the ALJ determined Plaintiff was not disabled from October 17, 2012 through January 20, 2016, the other evidence submitted to the Appeals Council dated July 25, 2016 clearly applies to a period of time after the adjudicatory period. Tr. 12. *See Brewes*, 682 F.3d at 1162 ("The Commissioner's regulations permit claimants

to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, *so long as the evidence relates to the period on or before* the ALJ's decision.") (citing 20 C.F.R. § 404.970(b)) (emphasis added)).

Next, even assuming the other evidence related to the adjudicative period, the Commissioner's ultimate non-disability decision remains supported by substantial evidence. The Supreme Court recently reiterated that substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (citation and internal quotation marks omitted). In *Brewes*, the court reviewed other evidence submitted to the Appeals Council to determine whether the Commissioner's final decision remained supported by substantial evidence. *Brewes*, 682 F.3d at 1163-64. The court reviewed two additional treating physicians' opinions, which explained that despite the plaintiff's compliance with treatment, her symptoms decreased minimally and continued to affect her ability to perform activities of daily living, relationships, and ability to work. *Id.* The court further found that there was no evidence that the plaintiff was malingering or had exaggerated her symptoms, and that the opinions submitted to the Appeals Council were consistent with their prior treatment notes. *Id.* at 1164. Thus, the court determined that the later opinions altered the calculus of substantial evidence, and remanded for benefits. *Id.* at 1164-65.

The evidence submitted to the Appeals Council in the instant case directs the opposite conclusion. The 2016 opinion by Dr. Lebow alleges that Plaintiff is limited to 15-20 minutes of standing, and one-to-two hours sitting per workday. Tr. 12. In contrast, the other form apparently completed by Dr. Lebow is inconsistent because it alleges Plaintiff is able to stand or walk for

two hours per workday, and sit for four. Tr. 9. Dr. Lebow's 2016 opinion assessing substantial

limitations in standing and walking is also inconsistent with his November 2014 chart note in

which he stated that Plaintiff was "using a cane for ambulation although I [could] not identifying

[sic] major physical impairment that would justify this . . . ." Tr. 471. The 2016 opinion is also

inconsistent with other evidence of record in that it indicates Plaintiff's cane was "medically

recommended" to her, despite Plaintiff's own testimony that the cane was not prescribed.

*Compare* Tr. 10 *to* Tr. 95. Such inconsistencies are a valid reason to question the reliability of a

medical opinion. *Tomasetti*, 533 F.3d at 1041.

Additionally, in contrast to the matter in *Brewes*, this record includes evidence that

Plaintiff was exaggerating her symptom allegations. For example, Dr. Lebow suggested that

Plaintiff had a tendency to fixate on her pain. Tr. 39. In November 2014, the doctor noted that

"[a]s usual, she had her notebook listing all of the pain issues that she has[,] which also, as usual,

are voluminous." Tr. 471. The suggestion that Plaintiff may exaggerate her pain was echoed by

Dr. Belcher, who opined that she "lacks some credibility in that she appears to be exaggerating

her physical and emotional pain to some degree." Tr. 504.

Moreover, despite Dr. Lebow's recent opinion, substantial evidence supports the ALJ's

finding that the reliability of Plaintiff's testimony is doubtful. For example, although Plaintiff

told Dr. Belcher that her mental impairments did not "get in the way" of her ability to work, her

brief before this Court asserts that her mental impairments "affect me greatly." *Compare* Pl.'s

Br. 1 *to* Tr. 504. Indeed, even Dr. Lebow's 2016 opinion indicates that Plaintiff is not limited in

activities of daily living. Tr. 12. Further, Plaintiff's subjective pain complaints remain

inconsistent with her statement to a provider in October 2014 that her prior doctor had

effectively managed her chronic pain for the previous 14 years. Tr. 490. Again, such rationales

for discounting a medical opinion are valid. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

For these reasons, the Court concludes that based on the record as a whole, the ALJ's non-disability decision remains supported by substantial evidence.

V.    **The record is complete, considering that the Agency removed information unrelated to Plaintiff, and because there is no new evidence before the Court.**

Plaintiff argues that when the ALJ's non-disability decision was sent to the Appeals Council, the record included medical records that belonged to someone else. Pl.'s Br. 3. Indeed, Plaintiff alerted the Appeals Council of her concern via correspondence that Exhibit 3F/2 included medical evidence pertaining to another individual. Tr. 352. However, the exhibit in question was removed from the record. Tr. 390. Although Plaintiff appears to be concerned that the erroneous evidence was a factor in her denial of benefits, there is no evidence that the ALJ relied on the removed evidence in rendering her decision. As such, any error in initially including the evidence in the administrative record was harmless. Because there was no prejudice, reversal of the ALJ's decision is not warranted. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Plaintiff also asserts that she has "new conditions that should be considered" in evaluating the ALJ's non-disability decision. Pl.'s Br. 3-4. Specifically, Plaintiff explains that she is currently being evaluated by a cardiologist to determine if her symptoms warrant a diagnosis of Postural Orthostatic Tachardia Syndrome ("POTS"). Plaintiff noted that she "just recently talked to her doctor about it," and that the doctor "didn't seem too concerned about all her new symptoms." Pl.'s Br. 3. Plaintiff alleges that a cardiologist subsequently recommended she wear a heart monitor to record associated symptoms. *Id.* However, such evidence was never

received by the Court. As such, there is no basis to reverse the ALJ's decision based on

Plaintiff's allegations regarding POTS.

Accordingly, the Court affirms.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 11th day of June, 2020.


/s/ Mark D. Clarke
MARK D. CLARKE
United States Magistrate Judge